TEXAS-CANADIAN OIL CORPORATION, LTD. (CANADIAN COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TEXAS-CANADIAN OIL CORPORATION (DELAWARE CORPORATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 100183, 103852.   Promulgated July 8, 1941.

*Henry Ravenel, Esq.*, and *William A. Blakely, Esq.*, for the petitioners.

*James H. Yeatman, Esq.*, for the respondent.

916

OPINION.

DISNEY: The respondent in the deficiency notice added to petitioner's income as reported $257,700.03 "profit on reorganization", explaining that the reorganization was held to result in realization of taxable gain under the provisions of article 112 (i) —1 of Regulations 86,[1] and the assets transferred, and therefore the stock received therefor, had value in excess of cost basis of the assets transferred. Our primary question, therefore, is whether the respondent erred in determining a profit on the reorganization by applying the provisions of the above regulation, based upon section 112 (i) of the Revenue Act of

---

[1] ART. 112 (i)—1. *Reorganization with, or transfer of property to, a foreign corporation.*—A foreign corporation will not be considered a corporation to which a tax-free transfer of property for stock or securities may be made, or a corporation a party to a reorganization with which a tax-free reorganization exchange may be made, unless, prior to the transfer or exchange, it has been established to the satisfaction of the Commissioner that such transfer or exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes. The term "Federal income taxes" includes the excess-profits tax on the net income of a corporation referred to in sections 702 and 703 of the Act.

Whether any of the exchanges or distributions referred to in section 112 (i), involving a foreign corporation, is in pursuance of a plan having as one of its principal purposes the avoidance of Federal income or excess-profits taxes, is a question to be determined from the facts and circumstances of each particular case. In any such case if a taxpayer desires to establish that the exchange or distribution is not in pursuance of such a plan, a statement under oath of the facts relating to the plan under which the exchange or distribution is to be made, together with a copy of the plan, shall be forwarded to the Commissioner of Internal Revenue, Washington, D. C., for a ruling. A letter setting forth the Commissioner's determination will be mailed to the taxpayer. If the Commissioner determined that the exchange or distribution is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income or excess-profits taxes, the taxpayer should retain a copy of the Commissioner's letter as authority for treating the foreign corporation as a corporation in determining the extent to which gain is recognized from the exchange or distribution. If the reorganization or the transfer is not carried out in accordance with the plan submitted, the Commissioner's approval will not render the transaction tax free.

1934.[2]  In addition, the petitioner urges that there was no profit realized by it in the reorganization, but that if it be said that profit was realized in the reorganization, it was not income from sources within the United States; that if it was from sources within the United States the profit was not to be recognized under the provisions of section 112 of the Revenue Act of 1934, regardless of subsection (i) thereof; and, finally, that the Board has authority to relieve it of the hardship involved in section 112 (i) if we conclude that the agreement of reorganization did not have as one of its principal purposes the avoidance of Federal income taxes.

The nature of the approach to the problem requires that we first resolve petitioner's last argument, since if it be sustained the other questions become immaterial.

1.  The petitioner urges that we hold that the agreement of reorganization did not have as one of its principal purposes the avoidance of Federal income taxes and therefore that the reorganization was not taxable, and that we reverse the Commissioner in holding that the reorganization was not tax free under section 112 (i), which requires that prior to such reorganization a foreign corporation shall establish to the Commissioner's satisfaction that the exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes.

The situation here is not essentially different from that in *Riley Investment Co.* v. *Commissioner*, 311 U. S. 55, where, as herein, the taxpayer was not advised as to a statutory provision—requiring an election to be made in the "first return."  When apprised of the provision, the taxpayer filed an amended return, much as the petitioner here furnished the information called for by section 112 (i).  The Court, in affirming the Circuit Court, which had affirmed this Board in holding that the amended return did not comply with the statute, said that "to require the administrative branch to extend the time for filing on a showing of cause for delay would be to vest in it discretion which the Congress did not see fit to delegate", and that "to extend the time beyond the limits prescribed in the Act is a legislative not a judicial function."  To the plea, which petitioner here also makes, that a hardship was imposed upon it, the Court further said: "That may be the basis for an appeal to Congress in amelioration of the strictness of

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

 *         *         *         *         *         *         *

(i) FOREIGN CORPORATIONS.—In determining the extent to which gain shall be recognized in the case of any of the exchanges (made after the date of the enactment of this Act) described in subsection (b) (3), (4), or (5), or described in so much of subsection (c) as refers to subsection (b) (3) or (5), or described in subsection (d), a foreign corporation shall not be considered as a corporation unless, prior to such exchange, it has been established to the satisfaction of the Commissioner that such exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes.

that section. But it is no ground for relief by the courts from the rigors of the statutory choice which Congress has provided." Various other statutes require, in a manner analogous to that of section 112 (i), affirmative action of the petitioner in order to have the benefits therein involved, e. g., consent prior to change of accounting method under section 46, and consent of affiliates prior to filing a consolidated return under section 141. The statute here involved provided for a determination by the Commissioner prior to the reorganization. It was not asked for at that time and was not made. In our opinion the Commissioner did not err in the view that he had no authority to make it upon application made after the reorganization. On this point we sustain the respondent and hold that he properly applied section 112 (i).

2. The petitioner argues that it realized no profit in the transaction with the Bahamas corporation, urging that the contract, taken as a whole, did not represent an exchange of its assets for Bahamas' stock, since the stock was issued directly to petitioner's stockholders and not to it. Suggestion is made that either the petitioner, in legal effect, liquidated its assets to its stockholders, who in turn transferred them to the Bahamas corporation in satisfaction of the subscription to its stock made on their behalf; or that, in effect, the stockholders transferred their stock to the Bahamas corporation for its stock, thus empowering it, as owner of such stock, to take the assets of the Canadian corporation in place of the stock. Cases are cited where substance and not form was controlling. We find none decisive here. Thus *R. C. Kuldell*, 34 B. T. A. 1116, involved agency of one company for another. Equal distinction from the instant matter appears to us in the other citations. Herein a corporation transferred its assets in consideration of stock in another, and directed the issuance thereof to its stockholders. Only the petitioner could convey its assets, and they were never conveyed to its stockholders. The fact that the stockholders received the consideration does not control. *Boggs-Burnham & Co.*, 26 B. T. A. 988; *First National Bank of Greeley* v. *United States*, 86 Fed. (2d) 938; *Nace Realty Co.*, 28 B. T. A. 467; *Northwest Utilities Securities Corporation* v. *Helvering*, 67 Fed. (2d) 619. We hold that the petitioner realized a profit on the exchange.

3. The petitioner also argues that section 112 (i) is not applicable to an exchange between two foreign corporations, that, assuming the Canadian corporation exchanged its assets for stock of the Bahamas corporation, there was reorganization under section 112 (g), and nonrecognition of gain; and that no reason exists for applying the provisions of section 112 (i) to foreign corporations and a transaction not affecting Federal income tax liability. Such contention requires us to ignore section 112 (i). On its face, the statute expressly covers

foreign corporations, and exchanges that are nontaxable when made between domestic corporations. It can not be ignored. That the transaction comes within the definition of reorganization under section 112 (g) is only preliminary. If within section 112 (b) (4), as here the transaction is, section 112 (i) must be applied, with the result of recognized gain. We see no merit in petitioner's argument on this point.

4. There remains for consideration the question as to whether the profit from the exchange was from sources within the United States, or without the United States and nontaxable under the provisions of sections 231 and 119 (e) of the Revenue Act of 1934, which in effect provide that a foreign corporation is taxable only upon profit from sources within the United States, and that if the profit is from sale or exchange of personal property, it is nontaxable if the sale or exchange takes place outside the United States. The petitioner points out, and we find, that the agreement was consummated outside the United States; but the respondent urges that the sale or exchange was of oil and gas leases, in Texas, and that, under the decisions of the courts of that state, such leases are real estate, so that under section 119 (a) (5), Revenue Act of 1934,[3] the income is from sources within the United States. Though the exchange plainly included personalty, such as cash, accounts receivable, and equipment on leaseholds, the profit upon which the Commissioner determined the deficiency arose solely from the exchange of oil and gas leases in Texas. The answer turns upon whether they are real estate within the purview of section 119 (a) (5) of the Revenue Act of 1934. The respondent urges the binding effect of decisions of the Texas courts; the petitioner, that on a question of Federal taxation the Board is not so bound.

The courts of Texas have in various cases construed oil and gas leases to be real estate. As to that state this is a concept so well settled that citation of authorities seems unnecessary. *R. E. Nail et al., Executors*, 27 B. T. A. 33. Section 119 (a) (5) of the Revenue Act of 1934 does not define real property. In *Metropolitan Life Insurance Co.* v. *United States*, 107 Fed. (2d) 311, the court said: "Since the Federal Statutes do not define the term 'property' or the rights attaching thereto, we must turn to the state law for their meaning. *Poe* v. *Seaborn,* 282 U. S. 101." In *Morrow* v. *Scofield*, 116 Fed. (2d) 17, the court considered the question as to whether

---

[3] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

(a) GROSS INCOME FROM SOURCES IN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States:

  *   *   *   *   *   *   *

(5) SALE OF REAL PROPERTY.—Gains, profits and income from the sale of real property located in the United States.

documentary stamp taxes need be affixed to assignments of oil and gas leases on lands in Texas, under section 800 and schedule A–8 of the Revenue Act of 1926, as amended, imposing tax with respect to any "Deed, instrument or right * * * whereby any lands, tenements or other realty sold shall be granted, assigned, transferred or otherwise conveyed * * *." Pointing out that the Texas decisions are uniform to the effect that mineral leasehold interests are interests in lands, tenements, or other realty, the court held that the statute required affixing of stamps. It was pointed out that *Burnet* v. *Harmel*, 287 U. S. 103, which the petitioner herein cites and relies upon, involved the question of whether a bonus received by the lessor for execution of an oil and gas lease was subject to capital gains provisions. The same question was involved in *Hirschi* v. *United States*, 67 Ct. Cls. 637, extensively cited by the petitioner here. It was held that such bonus was not capital gain. Obviously, these cases do not involve the question here presented, which is whether the owner of an oil and gas lease on land in Texas, in exchanging it, exchanges real property, within the text of section 119 (a) (5). In *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372, it was held that the amounts received for the sale by the lessee of an oil and gas lease was return of capital invested—which serves to distinguish a sale or exchange of an oil and gas lease by the owner from the receipt of bonus by the lessor, in the above cases cited by the petitioner here.

We are impelled by the above decisions to the conclusion that the petitioner, in the exchange of oil and gas leases constituting real estate under Texas law, derived income from sources within the United States within the intendment of section 119 (a) (5) of the Revenue Act of 1934.

Reviewed by the Board.

> *Decision will be entered for the respondent in Docket No. 100183, that there is a deficiency in income tax in the amount of $29,555.75 and in excess profits tax in the amount of $8,682.86, and that the Texas-Canadian Oil Corporation of Delaware, petitioner in Docket No. 103352, is liable for said amounts at law and/or in equity as transferee from the Texas-Canadian Oil Corporation, Ltd., petitioner in Docket No. 100183.*